**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

TIMOTHY J. JACOB,

                                              CASE NO. 5:19-cv-12016
          *Plaintiff*,                  DISTRICT JUDGE JUDITH E. LEVY
*v.*                                     MAGISTRATE JUDGE PATRICIA T. MORRIS

COMMISSIONER OF SOCIAL SECURITY,

          *Defendant.*
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF No. 17, 19)

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports Defendant Commissioner of Social Security's determination that Plaintiff Timothy J. Jacob is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment, (ECF No. 17), be **DENIED**, and the Commissioner's Motion, (ECF No. 19), be **GRANTED**.

## II.   REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B) and E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, the present case was referred to the undersigned Magistrate Judge to review the final decision of the Commissioner denying Plaintiff's claim for Title II Disability Insurance Benefits (DIB) and claim for Title XVI Supplemental Income Security Benefits (SSI). (ECF No. 4.) This case is before the Court upon the parties' cross-motions for

1

summary judgment. (ECF No. 17, 19.)

Plaintiff filed applications for DIB and SSI benefits on September 13, 2016, alleging that his disability began on July 29, 2016. (ECF No. 12, PageID.238.) The Commissioner denied the claim. (*Id.* at PageID.161.) Plaintiff requested a hearing before an ALJ on February 1, 2017, and a hearing was held on March 8, 2018. (*Id.* at PageID.169, 83.) The ALJ issued a decision on June 29, 2018, finding that Plaintiff was not under a disability within the meaning of the Social Security Act. (*Id.* at PageID.56-69.)

The Appeals Council denied review of the ALJ's decision, (*Id*. at PageID.50), and Plaintiff subsequently filed a complaint seeking judicial review of the ALJ's final decision on July 8, 2019. (ECF No. 1.) He then filed the present Motion for Summary Judgment on October 30, 2019, (ECF No. 17), after which the Commissioner countered with its own Motion on January 2, 2020. (ECF No. 19.)

### B.    Standard of Review

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).

2

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

### C.    Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

3

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing the residual functional capacity, which "is the most [the claimant] can still do despite [his or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

4

241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

###### D.     ALJ Findings

Following the five-step sequential analysis, the ALJ determined that Plaintiff was not disabled. (ECF No. 12, PageID.56-69.) At step one, the ALJ found that Plaintiff met the insured status requirements through December 31, 2020, and that he had not engaged in substantial gainful activity since his alleged onset date of July 29, 2016. (*Id.* at PageID.61.) At step two, the ALJ concluded that Plaintiff had the following severe impairments: chronic regional pain syndrome of right foot, osteoarthritis, personality disorder, attention deficit hyperactivity disorder (ADHD), adjustment order with depression, post-traumatic stress disorder (PTSD), and anxiety. (*Id.*) The ALJ also decided, however, that these impairments did not meet or medically equal a listed impairment at step three. (*Id.* at PageID.61-62.) Next, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform

> sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except: the claimant would be limited to no climbing ladders, ropes or scaffolds; occasionally climbing ramps and stairs, and balancing, stopping, kneeling, crouching, crawling; no pushing or pulling with the right lower extremity; no exposure to extreme cold or heat or excessive vibration or unprotected heights; work limited to simple and routine tasks; occasional interaction with the public and coworkers; use of handheld assistive device for ambulation; and he would require the ability to alternate between sitting or standing after [three] hours.

(*Id.* at PageID.63.) At step four, the ALJ found that Plaintiff could not perform any past relevant work. (*Id.* at PageID.67.) At step five, the ALJ found that Plaintiff could perform a limited range of sedentary work and that jobs existed in significant numbers in the national economy. (*Id.* at PageID.68.) This finding relied on the testimony of the

Vocational Expert (VE) about potential positions including sorter, Dictionary of Occupational Titles (DOT) code number 521.687-086, assembler, DOT code number 713.687-018, and packer, DOT code number 731.685.014. (*Id.*)

### E. Administrative Hearing

#### 1. Plaintiff's Testimony

At the hearing held on March 8, 2018, Plaintiff testified that he did not have a source of income and his family and friends helped him pay his bills; he had a valid driver's license and drove approximately three to four times a week (ECF No. 12, PageID.85.) He finished up to ninth grade in school, and later earned a General Education Development (GED) certification. (*Id.*) Plaintiff had never earned any vocational or other licenses or certifications. (*Id.*) When asked whether he was ever enrolled in special education courses in school, Plaintiff testified that he was enrolled in "reading classes" while in elementary school. (*Id.* at PageID.86.)

Plaintiff was injured on September 10, 2015 when a conveyor fell on and crushed his right foot. (*Id.* at PageID.99, 102.) Plaintiff stopped working on July 29, 2016,[1] and testified that at that time his employer was "laying [him] off," or "putting [him] off on workman's comp [sic]" because of his foot injury. (*Id.* at PageID.86.) Plaintiff held several positions as an employee prior to the accident, which included mold operator, crew leader

---

[1] The transcript states that Plaintiff testified he stopped working on July 29, 2019, but the hearing was held on March 8, 2018, and Plaintiff identified July 29, 2016 as his alleged onset date in other parts of the record. This writer surmises that this is simply a typo in the transcription where 2019 should have been 2016. (ECF No. 12, PageID.238 (where Plaintiff identifies July 29, 2016 as his alleged onset date); *Id.* at PageID.86 (where the transcript states "July 29, 2019" as Plaintiff's last date of employment); *Id.* at PageID.80-83 (confirming the date of the hearing on March 8, 2018)).

for a lawn care company, plastic press operator, heater box assembler on an assembly line, assembly line leader, and maintenance technician. (*Id*. at PageID.87-98.) In these various positions, Plaintiff would have to lift objects weighing up to 100 pounds. (*Id*.) Surgery was not performed on his foot after the accident and Plaintiff used crutches immediately after the injury. (*Id*.) The ALJ noted that Plaintiff, who continued to use crutches, even at the hearing, had many tests done on his foot and that at least one doctor suggested Plaintiff stop using crutches and use a cane, instead. (*Id*. at PageID.99-100.) Plaintiff testified that he tried using a cane but could not walk with it (*Id*. at PageID.101); he stated that he cannot put pressure on his right foot, and that because of his foot injury and his reliance on crutches, he was unable to work. (*Id*. at PageID.99-100.)

After Plaintiff's injury, he was able to work in a sedentary position for his previous employer. (*Id*. at PageID.101.) Plaintiff's role was to "sit in a cubicle for eight hours a day" and do "20 minutes worth of computer work." (*Id*.) He stayed in this sedentary position from his injury, September 10, 2015, until June 29, 2016. (*Id*.) Plaintiff testified that he could not continue to work in sedentary positions because he began experiencing tremors. (*Id*. at PageID.103.)

Plaintiff was not participating in physical therapy at the time of the hearing; he did physical therapy immediately after the accident but stated that he did not notice any improvement from the therapy. (*Id*. at PageID.104-105.) Plaintiff took medication to help control his tremors. (*Id*. at PageID.106.) Plaintiff experienced migraines approximately two to three times per month. (*Id*.) Plaintiff estimated that he could lift approximately ten pounds. (*Id*.) However, because Plaintiff continues to rely on crutches, he cannot lift or

hold anything while he is using the crutches, and he can walk approximately a half of a block before he must rest. (*Id.* at PageID.106-107.) Plaintiff also testified that he was previously taking medication for anxiety and ADHD but had to stop because those medications interfered with his pain medication. (*Id.* at PageID.109.) Plaintiff was unable to do chores around the house because of his use of crutches, and he spent most of his day reading, watching television, and making phone calls. (*Id.* at PageID.111-112.)

When asked by his attorney about his sleeping habits, Plaintiff testified that he does not sleep very well because of the pain in his foot and gets only about six hours of sleep. (*Id.* at PageID.112.) As a result, two or three days a week, Plaintiff sleeps during the day for about two hours. (*Id.* at PageID.113.) When again prompted by his attorney, Plaintiff testified that he could only stand for about an hour or two and could only sit for about three or four hours before his foot started bothering him. (*Id.* at PageID.115.) Plaintiff testified that approximately three or four times a day, he had to sit with his foot elevated for about an hour or two each time. (*Id.* at PageID.116.)

### 2. The VE's Testimony

The ALJ asked the VE to classify Plaintiff's past work. (*Id.* at PageID.123.) The VE considered all of Plaintiff's previous employment and classified the various positions as heavy exertion, light exertion, and a medium to heavy range of exertion. (*Id.* at PageID.123-124.) The ALJ then asked the VE to consider a hypothetical individual with Plaintiff's

> age and education and with the past jobs that you described. And further assume that the individual is limited to a sedentary exertional level with no climbing of ladders, ropes, or scaffolds. Occasional climbing of ramps and

> stairs. Occasional balancing, stopping, kneeling, crouching and crawling
> with no pushing or pulling with the lower right extremity. No exposure to
> extreme cold or heat or excessive vibration or unprotected heights and work
> limited to simple or routine tasks with occasional interaction with the public
> and coworkers. This person can never be exposed to hazards such as
> unprotected heights, or unguarded, or unprotected moving mechanical parts.

(*Id.* at PageID.124.) The ALJ asked whether such an individual could perform any of

Plaintiff's past work, and the VE indicated that he or she could not. (*Id.*) The VE further

testified that such a person could, however, perform other jobs in the national economy

such as sorter, DOT 921.687-086 (200,000 jobs); assembler, DOT 713.687-018 (550,000

jobs); and "packager, stuffer, bench hand type work," DOT 731.689-014 (150,000 jobs).

(*Id.* at PageID.125.)

The ALJ posed a second hypothetical, with the same information as the first, but

asked, "[i]f we add to that hypothetical the use of a handheld assistive device for

ambulation[,] [i]s there work that individual could perform?" (*Id.*) The VE responded that

there may be a 10 percent reduction in job availability for each given position, but that

generally, "a handheld device for ambulation would not be a factor" for the offered

positions. (*Id.*)

The ALJ then posed a third hypothetical, assuming the same information as

previously offered, including the use of the handheld device, except that this individual

required "the ability to alternate between sitting and standing after three hours." (*Id.* at

PageID.125-126.) The VE responded that "[i]n these three categories they offer the ability

to sit and stand, so there would be – but there would be a reduction. So, the sorting and

packing, I would say we have about, maybe 90,000 in the [national economy]. The

9

assembly, about, maybe 65,000 in the [national economy]. With packaging about the same, about 55,000 in the [national economy]." (*Id*. at PageID.126.)

In a fourth hypothetical, the ALJ posed an individual, with the same information as previously provided, but added "frequent handling and fingering with the bilateral upper extremities[.]" (*Id*.) The VE responded that the previously offered positions would be suitable, but noted a further reduction in the number of packaging positions, which require constant handling and fingering bilaterally—the VE estimated that 45,000 jobs would remain available to that hypothetical individual, though. (*Id*.)

Finally, in a fifth hypothetical, the ALJ posed a hypothetical individual, with the same information as previously provided, but who "would be off task 20 percent of the workday or would be absent from work two or more days a month[.]" (*Id*.) The VE responded that such a person would be precluded from work because of the amount of time off-task. (*Id*.) Finally, the VE testified that her testimony had been consistent with the DOT, but that some of the factors suggested by the ALJ, such as a sit/stand option, the use of a handheld device, the time off task, and the absences, were factors not listed in the DOT. (*Id*. at PageID.127.)

## F.    Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations[2] carve the evidence into categories:

---

[2] Various amendments have been made to the regulations since Plaintiff filed his claim. *See, e.g.*, Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (January 18, 2017) (effective March 27, 2017). Because the changes do not alter the outcome here—and, relatedly, they do not appear to exercise an impermissible retroactive effect on Plaintiff's rights, as the amendments are largely procedural changes in the process for analyzing evidence, *cf. Combs v Comm'r of Soc. Sec.*, 459 F.3d 640, 647 (6th

"acceptable medical sources" and "other sources." 20 C.F.R. § 404.1513 (2016). "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. 20 C.F.R. § 404.1513(a) (2016). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. 20 C.F.R. § 404.1513(d) (2016). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Both "acceptable" and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* When "acceptable medical sources" issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. § 404.1527. Excluded from the definition of "medical opinions" are various decisions reserved to the

---

Cir. 2006)—and the parties do not discuss them, it is unnecessary to determine whether they apply. Therefore, like many other courts, I will utilize the regulations in effect when Plaintiff filed his claim and the case was decided by the ALJ, along with the new regulations that explicitly apply to claims during this period. *See, e.g.*, 20 C.F.R. § 404.1527; *see generally* Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed Reg. 62560, 62578 (September 9, 2016); *see also Rodriguez v. Colvin*, 3:15CV1723, 2018 WL 4204436, at *4 n. 6 (D. Conn. 2018) ("[T]he Court reviews the ALJ's decision under the earlier regulations because the plaintiff's application was filed before the new regulations went into effect." (citing *Maloney v. Berryhill*, No. 16-cv-3899, 2018 WL 400772, at *1 (E.D. N.Y. 2018) (same))); *Miller v. Comm'r of Soc. Sec.*, No. 1:17CV0718, 2018 2773372, at *5 n. 3 (N.D. Ohio 2018) ("Plaintiff's claim was filed before March 27, 2017, and the ALJ's decision was rendered before the new regulations took effect. For the sake of consistency, the court continues to cite the language from the former regulations that were in effect at the time of the ALJ's decision."), *Rep. & Rec. adopted by* 2018 WL 2766020 (N.D. Ohio 2018); *Woodall v. Berryhill*, No. 1:17-cv-01289, 2018 WL 3133442, at *7 n. 3 (N.D. Ohio 2018) (applying the rules effective when the claimant applied for benefits), *Rep. & Rec. adopted by* 2018 WL 3126552 (N.D. Ohio 2018); *Meeks v. Comm'r of Soc. Sec.*, No. 4:17-cv-45, 2018 WL 1952529, at *4 n. 2 (E.D. Tenn. 2018) (applying the rules effective when the ALJ decided the case).

Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. 20 C.F.R. § 404.1527(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. 20 C.F.R. § 404.1527(c). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540-42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Because Plaintiff filed his claim before March 27, 2017, he is entitled to the benefit of the treating-source rule.  Under that rule, certain opinions from her treating physicians can receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. § 404.1527(c)(2). The ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d). Thus, the ALJ "will not give any special significance to the source of an opinion" regarding whether a person is disabled or unable to work, whether an impairment meets or equals a

Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. §
404.1527(d)(3).

The regulations mandate that the ALJ provide "good reasons" for the weight
assigned to the treating source's opinion in the written determination. 20 C.F.R. §
404.1527(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir.
2007). Therefore, a decision denying benefits must give specific reasons, supported by
record evidence, for the weight granted to a treating source's opinion. *Rogers*, 486 F.3d at
242. For example, an ALJ may properly reject a treating source opinion if it lacks
supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp.
637, 640-41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th
Cir. 1995).

An ALJ must also analyze the credibility of the claimant, considering the
claimant's statements about pain or other symptoms with the rest of the relevant evidence
in the record and factors outlined in SSR 96-7p, 1996 WL 374186 (July 2, 1996).[3]
Credibility determinations regarding a claimant's subjective complaints rest with the ALJ.
*See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir.1987).
Generally, an ALJ's credibility assessment can be disturbed only for a "compelling

---

[3] Although the Commissioner has rescinded SSR 96-7p and eliminated the term "credibility" from
Administration policy, SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016), the underlying regulation has
remained materially unchanged, *see* 20. C.F.R. § 404.1529(c), and I agree with the courts in this District
that have continued to apply SSR 96-7p to cases arising prior to its rescission. *See, e.g.*, *Cooper v. Comm'r
of Soc. Sec.*, No. 16-cv-13477, 2017 WL 3923984, at *3 (E.D. Mich. August 21, 2017), *Rep. & Rec. adopted
by* 2017 WL 3891971 (E.D. Mich. Sept. 9, 2017); *Tuttle v. Comm'r of Soc. Sec.*, No. 16-11144, 2017 WL
2928021, at *6 n. 3 (E.D. Mich. June 9, 2017), *Rep. & Rec. adopted by* 2017 WL 2905125 (E.D. Mich. July
7, 2017).

reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529(a) (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529 (2016); SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments will "not alone establish that [he or she is] disabled." 20 C.F.R. § 404.1529(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996). Instead, the absence of objective, confirming evidence forces the ALJ to consider the following factors:

(i)    [D]aily activities;

14

(ii)    The location, duration, frequency, and intensity of . . . pain;
(iii)   Precipitating and aggravating factors;
(iv)   The type, dosage, effectiveness, and side effects of any medication .
      . . taken to alleviate . . . pain or other symptoms;
(v)    Treatment, other than medication, . . . received for relief of . . . pain;
(vi)   Any measures . . . used to relieve . . . pain.

20 C.F.R.§ 404.1529(c)(3) (2016); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th

Cir. 1994); SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996). Furthermore, the claimant's

work history and the consistency of his or her subjective statements are also relevant. 20

C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

### G.    Arguments and Analysis

Throughout his Motion, Plaintiff advances four arguments in support of his

conclusion that substantial evidence does not support the ALJ's decision: 1) the ALJ erred

in finding that Plaintiff's diagnoses failed to meet or equal a listed impairment; 2) the ALJ

erred in failing to give controlling or great weight to Plaintiff's treating physician,

Gladstone Payton, M.D. (Dr. Payton); 3) the ALJ's determination was based on an

inadequate credibility determination; and 4) the ALJ's finding that Plaintiff could perform

other work is without substantial support. (ECF No. 17, PageID.924-925.)

### 1.  Plaintiff's Diagnosis as a Listed Impairment

Plaintiff argues that the ALJ failed in concluding that requirements of Listing

1.02(A) were not met. (*Id*. at PageID.946.) Specifically, Plaintiff argues that the Listing

was met based on test results indicating advanced bony contusion, post-traumatic arthritis,

and plantar fasciitis. (*Id*. at PageID.944.)

In order to satisfy the criteria of Listing 1.02A, a claimant must show, in pertinent part, the following:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02.

The ALJ noted that "Listing 1.02 is not met because the record does not demonstrate gross anatomical deformity and chronic joint pain and stiffness with signs of limitations of motion or other abnormal motion of the affected joint(s), and findings on appropriate medical imaging of joint space narrowing, bony deconstruction, or ankylosis of the affected joint . . . ." (*Id*. at PageID.62.) Although Plaintiff argues that "[t]he record overwhelmingly shows that [Plaintiff] has ineffective ambulation and has needed [two] crutches to ambulate at all times[,]" (ECF No. 17, PageID.944), the ALJ considered evidence that on multiple occasions, "[Plaintiff's] physician advised [him] to wean off his crutches and begin using a cane. [] [Plaintiff's] physician also recommended that [he] engage in normal activity to desensitize his right foot." (*Id*. at PageID.65.) Additionally, Plaintiff points to evidence in the record which provided, on September 18, 2015, that the "[f]indings would support fractures *or* bony contusions…; post[-]traumatic arthritis…[e]vidence of mild plantar fasciitis[.]" (ECF No. 12, PageID.463)(emphasis added.) However, in contrast, another report conducted on September 10, 2015, noted "[t]here is no fracture of malalignment. No

16

intrinsic bony abnormalities identified. Joint spaces preserved. Soft tissue unremarkable."
(*Id.* at PageID.362.)

Plaintiff did not provide evidence of "medically acceptable imaging" of his alleged listed impairment as required by 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02, and the evidence that was provided in support of the listing was contradicted by other evidence in the record. As Defendant points out, where conflicts exist in the evidence, it remains the ALJ's duty to resolve those conflicts. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987) ("Even if the court might arrive at a different conclusion, the decision must be affirmed if supported by substantial evidence."). The ALJ did not err in concluding that Plaintiff did not meet the objectively required criteria in Listing 1.02.

### 2.   Weight Given to Dr. Payton's Opinion

Plaintiff then argues that the ALJ failed to give appropriate weight to the medical opinions of Dr. Payton, Plaintiff's treating physician. (ECF No. 17, PageID.946.) Specifically, Plaintiff argues that Dr. Payton's opinions should have been given great or controlling weight. (*Id.*)

The ALJ acknowledged that Dr. Payton opined, in medical source statements over two years, that Plaintiff required crutches or an ankle boot and two canes to walk or stand. (ECF No. 12, PageID.65.) However, the ALJ also noted Dr. Payton's statement that still, Plaintiff would be able to "perform a sit down job with no standing, walking, lifting, kneeling, or stooping." (*Id.*) The ALJ explained that it issued only little weight to Dr. Payton's opinions for two reasons: 1) his opinions were "excessive in light of the medical evidence," and 2) because "the ultimate decision of disability is an issue reserved to

17

Commissioner[.]" (*Id.*)

The ALJ reasoned that Dr. Payton's opinion was excessive in light of other medical evidence, including "the normal muscle tone exhibited by [Plaintiff] during treatment." (*Id.*) In addition, the record contains medical evidence from other physicians recommending that Plaintiff stop using crutches, begin using a single cane, begin putting slight pressure on his foot to desensitize it, and a prescription for Plaintiff to begin using a walker, in contrast to Dr. Payton's conclusions that Plaintiff would need crutches or two canes. (ECF No. 12, PageID.450, 481, 774-775.) The record also contains medical evidence from other sources providing that Plaintiff could "return to work without restrictions" and that Plaintiff seemed to "do well" working in a sedentary position, (*Id.* at PageID.483, 491-493, 564), in contrast to Dr. Payton's opinion that Plaintiff would be unable to perform any job requiring "bimanual dexterity" based on Plaintiff's tremors. (*Id.* at PageID.639.) Indeed, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels*, 882 F. Supp. at 640-41.

In addition, the ALJ noted that Dr. Payton's opinion referenced an assessment regarding Plaintiff's disability, which is an "issue reserved to the Commissioner." (ECF No. 12, PageID.65.) Specifically, Dr. Payton opined that Plaintiff was "totally incapacitated." (*Id.*) To be sure, the only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments, 20 C.F.R. § 404.1527(c)(2), and the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. § 404.1527(d). These issues, which are reserved to the Commissioner, include opinions regarding whether a person is disabled or unable to work, whether an impairment

18

meets or equals a Listing, the individual's RFC, and the application of vocational factors. 20 C.F.R. § 404.1527(d)(3).

Upon review of the medical evidence in the record, the ALJ provided "good reasons" for the weight assigned to Dr. Payton's opinion, 20 C.F.R. § 404.1527(c)(2); *see also Dakroub*, 482 F.3d at 875, and did not err in assigning little weight to his opinion.

### 3.  Plaintiff's Subjective Complaints of Pain – Credibility

Next, Plaintiff contends that the ALJ failed to properly assess his subjective complaints. Specifically, Plaintiff argues that there is no substantial evidence that he was exaggerating symptoms, his testimony should therefore have been given great weigh, (ECF No. 17, PageID.950-951), and that the ALJ erred in finding that Plaintiff's complaints about his pain were not fully credible. (*Id*. at 950.)

Plaintiff argues that he has been "very consistent" in his explanation of his pain and limited daily activities to both the SSA and his medical providers. (*Id*.)  Further, Plaintiff argues, "[f]airly considering the whole record, there is no substantial evidence that [Plaintiff] exaggerated his symptoms, and his testimony should have been given great weight." (*Id*. at PageID.950-951.)

The ALJ did note that Plaintiff's medically determinable impairments could have reasonably been expected to cause his alleged symptoms (ECF No. 12 at PageID.64), but ultimately determined that his statements concerning the "intensity, persistence and limiting effects" of his alleged symptoms were inconsistent with the medical evidence in the record. (*Id*. at PageID.67.) Specifically, the ALJ noted that Plaintiff testified he was still able to "prepare meals, do laundry, do light cleaning, drive a car, and go out shopping."

(*Id.*) The ALJ relied upon evidence in the record that, although Plaintiff complained of pain in his foot, he "presented with full motor strength and normal muscle tone." (*Id*. at PageID.64.) The ALJ also referred to "the repeated recommendations to cease the use of crutches and use his right foot more" to indicate that Plaintiff's complaints were inconsistent with the medical record. (*Id*. at PageID.67.)

The ALJ did not "disregard the claimant's subjective complaints about the severity and persistence of the pain simply because they lack substantiating objective evidence[,]" SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996), but instead considered Plaintiff's "daily activities" and "any measures . . . used to relieve . . . pain"—or more accurately, measures that were not used by Plaintiff, such as the use of a single cane—in accordance with 20 C.F.R.§ 404.1529(c)(3) (2016).

Plaintiff's arguments do not undermine the ALJ's assessments. Although Plaintiff argues that the ALJ did not properly consider his subjective complaints, the ALJ considered the pain that Plaintiff complained of, then properly assessed all the medical evidence and made specific findings that are supported by substantial evidence.

### 4.   Plaintiff's RFC and Testimony of the VE

Finally, Plaintiff argues that the ALJ's conclusion that Plaintiff could perform some sedentary work was without substantial support and premised upon inadequate questioning of the VE. (ECF No. 17, PageID.951.) Specifically, Plaintiff argues that the hypothetical questions posed to the VE did not include all of Plaintiff's impairments, including "[r]equirement of using [two] crutches to ambulate; need to elevate his right leg over his heart periodically…; inability to do a job requiring bimanual dexterity due to

20

tremors…and…limitations due to chronic pain, daytime somnolence, and daily use of narcotic medication, including excessive work absences and time off-task." (*Id.*)

However, in its written determination, the ALJ did consider Plaintiff's ability or inability to perform sedentary work and found that "[Plaintiff's] ability to perform all or substantially all of the requirements of [sedentary work] has been impeded by additional limitations." (ECF No. 12, PageID.68.) But, even considering those factors that impeded Plaintiff's ability, the VE testified that Plaintiff would still be able to perform jobs such as sorter, assembler, or packer. (*Id.*) The hypothetical situations posed by the ALJ to the VE included an individual who required "the use of a handheld assistive device for ambulation[,]" "the ability to alternate between sitting and standing after three hours[,]" could perform "frequent handling and fingering with the bilateral upper extremities[,]" and "would be off task 20 percent of the workday or would be absent from work two or more days a month[.]" (*Id.* at PageID.125-127.) The VE conceded that an individual who was off task more than 20 percent of the workday would not be competitive for employment, but based on her professional experience and expertise, and as consistent with the DOT, sorter, assembler, and packer jobs would be available to Plaintiff in the national economy with the other limitations. (*Id.*)

Further, contrary to Plaintiff's argument, the ALJ did consider Plaintiff's limitations when it concluded that his severe impairments were chronic regional pain syndrome in his right foot, osteoarthrosis, personality disorder, ADHD, adjustment order with depression, PTSD, and anxiety. (*Id.* at PageID.61.) Still, after acknowledging these impairments as severe, the ALJ found, based on the record medical evidence and the testimony of the VE,

that Plaintiff had the RFC to perform certain sedentary work.

The ALJ also considered Plaintiff's "inability to do a job requiring bimanual dexterity due to tremors[.]" (ECF No. 17, PageID.951.) Plaintiff testified that, after the accident involving his foot, he was working in a sedentary position. (ECF No. 12, PAgeID.101-103.) He only stopped working in that sedentary position, he testified, because of his tremors. (*Id.*) The ALJ found that "[i]n May 2017, [Plaintiff] reported his tremor was stable since he started treating with medication [and] [i]n November 2017 and January 2018 treatments, [Plaintiff] reported his tremor had improved with medication treatment." (*Id.* at PageID.61-62.) Thus, the ALJ did consider this impairment, and concluded that it was not severe. (*Id.*)

In sum, the ALJ's conclusion was supported by substantial evidence, or, "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241.

### H.    Conclusion

For these reasons, I conclude that substantial evidence does support the ALJ's decision. Consequently, I recommend **DENYING** Plaintiff's Motion, (ECF No. 17), and **GRANTING** the Commissioner's Motion. (ECF No. 19).

## III.    <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may

respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  May 6, 2020                                  S/PATRICIA T. MORRIS
                                                    Patricia T. Morris
                                                    United States Magistrate Judge

## <u>CERTIFICATION</u>

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: May 6, 2020                           By <u>s/ Kristen Castaneda</u>

Case Manager